## Commonwealth *v.* Polise, Appellant.

*Criminal law and procedure—Receiving stolen goods—Evidence —Sufficiency—Uncorroborated testimony of an accomplice—Accomplice.*

Upon the trial of an indictment for receiving stolen goods, where there is no evidence to sustain a conviction except the testimony of an accomplice, and there is some corroboration of the defendant's denial of guilt, it was error for the trial court to refuse to direct the jurors to closely scrutinize the testimony and accept it with caution.

The term accomplice, with reference to the quality of the evidence of a witness, means any criminal connection with a matter on trial, either as principal in the first or second degree, or accomplice, or accessory.

Argued November 15, 1922. Appeal, No. 75, April T., 1923, by defendant, from judgment of Q. S. Lawrence Co., March sessions, 1922, No. 63, on verdict of guilty in the case of Commonwealth v. Jim Polise. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Indictment for receiving stolen goods. Before EMERY, P. J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which judgment of sentence was passed. Defendant appealed.

*Error assigned,* inter alia, was refusal to instruct the jury particularly with reference to the weight to be given to the testimony of an accomplice.

*James A. Chambers,* and with him *Thomas W. Dickey,* for appellant.—It is the duty of the court to admonish the jury of the danger of convicting upon the uncorroborated testimony of an accomplice and it is common practice for the courts to advise them not to do so:

Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Sayars, 21 Pa. Superior Ct. 75; Com. v. Klein, 42 Pa. Superior Ct. 66; Cox v. Com., 125 Pa. 94.

*R. L. Hildebrand,* District Attorney, for appellee.— There is no rule of law in Pennsylvania that forbids a conviction on the uncorroborated testimony of an accomplice: Com. v. Craig, 19 Pa. Superior Ct. 94; Cox v. Com., 125 Pa. 103; Com. v. DeMasi, 234 Pa. 570.

OPINION BY HENDERSON, J., March 2, 1923:

The defendant was convicted of receiving stolen goods. The fact of the larceny was not questioned. Three men were engaged in its commission; one of these, Oscar Grannis, was called as a witness for the Commonwealth and testified that the next day after the larceny he delivered the stolen property to the appellant at the latter's garage on Diamond Alley, in New Castle, from whom he received $220 for the cigarettes. He testified that he had an arrangement with the defendant before the larceny was committed for the sale of the cigarettes and that the delivery was pursuant to that arrangement. No witness, except Grannis, testified to the connection of the defendant with him in the transaction, nor was any of the stolen property found in the defendant's possession. At the trial the defendant's counsel presented a number of points for charge, some of which were affirmed and others refused. Complaint is especially made of the action of the court in refusing the fifth and sixth points; in the first of which the court is requested to charge that the witness, Grannis, was a codefendant; that his testimony should be scrutinized closely, and if the jury should be satisfied that he testified falsely in a material matter, they might disregard a part or all of his testimony. The answer of the court was "that point as it is drawn is refused." In the sixth point the court was requested to charge that the only evidence in the case, tending to show that the defendant received the stolen property,

being from Oscar Grannis who took part in the stealing of the goods, the verdict of the jury must be not guilty for the reason that the testimony of the witness was not corroborated. This point was also refused as drawn. If the points are examined critically the answers, thereto cannot be said to be objectionable, for as to the first Grannis was not a codefendant with the appellant, and as to the second, the jury was not bound to acquit the defendant if the case were only supported by the uncorroborated testimony of an accomplice. But the evident purpose of the points was to bring to the attention of the court a subject important to the defendant and with respect to which he was entitled to the instruction of the court in the charge to the jury. The use of the word "codefendant" in the fifth point was evidently an inadvertence, and the defendant should not be made to suffer the effect of what was obviously an oversight. The points both suggest the quality of the evidence of Grannis and were drawn with reference to a well-established rule of practice at common law and in this State, which is to admonish the jury of the danger of convicting on the testimony of an accomplice unless he is corroborated to some extent, especially as to the person he accuses. This course of procedure is established by numerous cases; among our own are: Watson v. Com., 95 Pa. 418; Ettinger v. Com., 98 Pa. 338; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. Emmett et al., 74 Pa. Superior Ct. 86. Such corroboration should be directed to the identification of the accused. Corroboration as to occurrences not bearing directly on the guilt of the defendant is not sufficient. It is not the law that a conviction cannot be had on the uncorroborated testimony of an accomplice. If under all of the evidence the jury are satisfied of the guilt of the defendant, they are authorized to return a verdict accordingly. This is implied from the competency of the witness, but the corrupt source of the evidence and the inducement of the witness to testify with a hope of immunity affect the credibility of the testi-

mony. The propriety of the practice is illustrated in this case for it appears from the testimony of the witness that he had a promise from the prosecutor and the officers concerned in the arrest that they would do what they could for him; that they said to him they would be his friends and try to help him if he would tell about the larceny. He was therefore a discredited witness because of his connection with the stealing of the property and was giving evidence with the hope that he might thereby be relieved from punishment. As there was no evidence whatever except that of Grannis to sustain a conviction of the defendant, and as the latter's denial of guilt was corroborated to some extent, the case was one in which reference should have been made in the charge to the danger of convicting on the testimony of an accomplice alone. What the court said to the jury was that the fact that Grannis and Jameson admitted the theft of the property was not a reason why their testimony should be disregarded; that the jury having heard their stories and observed their manner when on the witness stand and having learned their past records should take all this into consideration in determining what credit they would place on what they say, and that in examination of the testimony of the witnesses both for the Commonwealth and the defendant, the jurors had a right to take into consideration the interest any witness might have in the outcome of the case. Their attention was directed to the appearance of all of the witnesses, the manner in which they testified and the nature of the statements which they gave with a direction that the jurors should take these into consideration in reaching a verdict, but nowhere was there any reference to the discredit of Grannis on whose testimony the Commonwealth's case rested. With that out of view the prosecution could not have been sustained. The testimony of Jameson who was named with Grannis in the references made by the court to the manner and testimony of those witnesses, did not tend to convict the defendant for he was not present when the alleged delivery of the property took

place. It cannot be said that the testimony of Jameson corroborates the Commonwealth's case as to the defendant's guilt because he saw Grannis drive down the alley in the direction of the defendant's garage, for the evidence is uncontradicted that the garage had been rented by the defendant to one Rogers who was in possession of it and had been for a considerable time. The attention of the jury should therefore have been directed to the law relating to the weight to be given to the testimony of an accomplice.

It is said however that Grannis was not an accomplice in the crime charged against the appellant, and there are some authorities from states in which there is statutory prohibition against the convicting of a defendant on the uncorroborated testimony of an accomplice which hold that one is not an accomplice who could not be indicted in the same case. But the term accomplice with reference to the quality of the evidence of a witness means any criminal connection with a matter on trial either as principal in the first or second degree or accomplice or accessory: 4 Blackstone's Commentaries 331; 1 Russell on Crimes 21; 1 Phi. Evidence 28; 1 Bouvier's Law Dictionary 62; and we have no doubt that it covers a transaction of the character shown in the Commonwealth's evidence for that would establish a conspiracy between Grannis and the defendant to steal and the execution of that conspiracy by the delivery of the property to the defendant. Giving credit to the testimony of Grannis, the defendant was connected with the larceny as well as the receipt of the stolen property. Grannis was the promotor of the larceny and the defendant coöperated with him as contended by the Commonwealth. In the broad sense in which the word accomplice is used as related to the credibility of a witness, we think the facts bring this case within the rule which requires the court to direct the jurors to closely scrutinize such testimony and accept it with caution.

The judgment is therefore reversed with a venire facias de novo.